# GENERAL ELECTRIC CO. v. PHILADELPHIA ELECTRIC & MFG. CO.

### (Circuit Court of Appeals, Third Circuit.    June 24, 1921.)

### No. 2669.

Patents ⟨⟩328—Reissue 14,341, for incandescent lamp socket, not infringed.

The Jones reissue patent, No. 14,341 (original No. 818,253), for an incandescent lamp socket is limited to the specific structure described, and, as so limited, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the General Electric Company against the Philadelphia Electric & Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

See, also, 226 Fed. 488; 232 Fed. 722, 146 C. C. A. 648.

Samuel Owen Edmonds, of New York City, for appellant.

Charles Howson and Charles H. Howson, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The invention of the Jones patent No. 818,253, related to sockets for incandescent lamps, and especially for those used in series incandescent lighting. It consisted of three parts, which, in the language of claim 1, were as follows:

(1) "A receptacle having automatic line-closing contacts,
(2) a lamp-socket adapted to receive
(3) an ordinary incandescent lamp therein and (2) carrying co-operating contacts normally separated by insulation of low dielectric value."

We have held that this claim of the Jones patent, covering essentially a three-part device, was too broad as against Wirt (No. 465,508) and was, therefore, invalid. 232 Fed. 722, 146 C. C. A. 648.

The complainant, assignee of the inventor, thereupon surrendered the Jones patent and obtained a reissued patent (No. 14,341) on the same specifications, omitting the invalid claim and substituting two new claims drawn to conform to our adverse ruling and to disclose what it believed, in view of our decision, to be Jones' actual improvement. Disclaiming any right to recover from the defendant for what it had done before the reissue, the complainant filed the present bill, presenting for adjudication an invention based, not on the three parts which, being found in Wirt, invalidated the original Jones patent, but on a device consisting of the same three parts particularly described as to their structure by the two new claims of the Jones reissue. These claims, although expressed in different language, may for present purposes be regarded as the same. The language of the first claim (italicized to distinguish the new matter in the reissue from the old matter in the original) is as follows:

"1. In series incandescent lighting, a receptacle *comprising an insulating block* provided with automatic line-closing contacts, an *insulating* socket

*closed at one end and open at the other and provided, adjacent to the latter, with contacts encompassed by said insulation and adapted for coaction with the base of an ordinary lamp and, adjacent to the closed end, with cooperating contacts normally separated by insulation of low dielectric value, and means for detachably connecting said socket and receptacle and thereby opening said line-closing contacts, the insulating outer surface of said socket forming a hand-hold free from conductive parts or dangerous proximity thereto and adapted to be grasped to detach said socket from said receptacle.*

Mainly on the evidence of the case on the original patent, the District Court, speaking in an opinion by Judge Dickinson, held that claims 1 and 2 of the reissue, here in suit, limit the invention to its specific structural features, and, accordingly, dismissed the bill. The opinion so accurately reflects our views that we shall, on this appeal, avail ourselves of it for a statement of the case and a statement of the reasons for our decision. It is as follows:

"Passing the question which the defendant raises of the right of the plaintiff to a re-issue, in order to present the other questions involved, these observations may be made in order to clarify the atmosphere in which the rights of the parties must be viewed. In the first place, the question is not whether in view of what Jones did the plaintiff is not entitled to a patent for something in spite of the Wirt patent, but whether it is entitled to what is set forth in the claims of the re-issued patent. We say this because as the defendant itself holds a patent upon the infringing device covering the features of its special construction, the right of the plaintiff to a like patent cannot be deemed to be in controversy.

"The task of the plaintiff, as it frankly avows, was not to secure such a patent, but one which, while it escaped conflict with the Wirt patent, would, at the same time, read upon the defendant's device. Nothing short of this will answer its purposes. That the disclosures of the Wirt patent exclude all its features from any patent issued upon the strength of the Jones invention is res adjudicata. These opposing devices concern an appliance used in the 'series' system of incandescent electrical lighting. The obvious practical necessity is that the construction must consist of at least two parts. When it does so consist, the terminology of the art permits of one of these parts being called a lamp and the other a socket or receptacle. A further necessity, although not such an obvious one, has been found to be the presence of what is called a line closer and also what is called a film cut-out. Without going into any detailed statement of the development of the art, we now know that it is of advantage to have the contrivance made in three parts instead of two. This thought of having three parts was the contribution of Wirt which Jones must be considered to have adopted and thus borrowed from the prior art.

"To appreciate what Jones did, we must go back to the Thomson device. This, as we would expect from the genius of its author, possessed valuable features. It had, however, shortcomings which led to its disuse. The defects were so soon apparent that it would perhaps be more accurate to speak of its non-use. The Thomson device showed a method of locating line closer and film cut-out. As the device was an impracticable one, those who had to do with the art, assumed that the error which Thomson committed was in wrongly locating these features.

"Out of this assumption grew ten or more years of vain effort to meet the difficulty by changing the location of these features as Thomson located them. Jones solved the vexing problem by returning to the discarded idea of Thomson, but instead of putting the cut-out in the lamp he put it in the socket, and changed Thomson's socket into what Jones called a receptacle, which was made to bear the whole burden of the line closer, Jones introduced a third part, which he called the receptacle. The problem was thus solved. The proof of this is the practical and commercial success of the Jones device and its appropriation by the defendant.

"If the foregoing were a full recital of all which had been accomplished in the art before Jones, his right to what, in the happy phrase of Judge Mc-Pherson, was called 'the commanding place' which he first claimed, could not be successfully denied to him. It is not, however, a full recital, for it omits the vital part that the idea of the introduction of this third part for the very purpose for which Jones introduced it and for the very use which Jones made of it had occurred to Wirt, and had been disclosed by his patent application before Jones came upon the scene. Why then was not the Wirt device as much of a success as that of Jones at once proved itself to be? The fact, for it is a fact, that no commercial use was made of the Wirt device would be entitled to great weight, were it not for the other fact that the Wirt and Jones devices were in the same 'strong hands,' and that by submerging Wirt and bringing Jones to the surface the plaintiff would have been able to have greatly prolonged the life of its monopoly. The plaintiff is admittedly concluded by the finding that no patent issued to reward Jones for what he did can cover in its claims the three-part features of his device.

"The touchstone of the case now before us is to be found in the following question: Given the like right to make use of the Wirt disclosure to the maker of the Jones device and to the maker of that of the defendant, does the latter infringe any of the inventive features of the former? If the claims of the reissued patent are limited to the specific features of construction, a finding of the validity of the claims would give so little promise of a finding of infringement and would have so little of practical value that a finding of infringement is not even asked.

"Because of this, without multiplying words the finding is made that the claims now before us should be so read as to limit them to the specific structural features of the Jones device, and that when so read the defendant's device does not infringe.

"We can applaud the persistency of counsel for plaintiff in upholding what he believes to be the right of his client to have the claims given such meaning as that they may be read upon the defendant's machine; we are compelled to admire the ingenuity and ability displayed in creating and defending the position selected from which to assert this claim of right, and we can commend the earnestness with which the argument is pressed, but we cannot escape the impression that back of the confidence of counsel is the subconscious, perhaps the unconscious, thought that the ruling made in the former case was wrong and should be corrected. Of course, the present proceeding before this Court cannot be used to serve any such appellate purpose. In no event would a trial Court be asked to make a ruling in the present case, which would be in conflict with the decree before made by an appellate court. What the plaintiff was before asking was for a decree giving to it a 'commanding place' in the art. A consequence would have been that no other person could make use of the Wirt disclosure. This claim of right was denied. There was no finding that plaintiff did not have the right to a subordinate place. Indeed, as counsel for plaintiff reads the opinion, there was a plain intimation that plaintiff did have this right. The inference, therefore, is that as in the view of counsel the Court was of opinion that the claim could be read and followed so as to read upon defendant's device, this reading might have been given to it. In fact, counsel now thinks this is what the Court should have done, and frankly says so. This makes not for the plaintiff's present contention but against it. This is because the Court did not uphold the validity of the claim to even a limited extent, but dismissed the bill. We do not see how the inference can be escaped that the effect of the ruling was the expression of the opinion of the Court that the claim could not be so read as to make of the defendant's device an infringement. This is now the very thing which the plaintiff is seeking to have done. We are, in consequence, asked to do what the Circuit Court of Appeals refused to do in the former case. This request at least approaches an encroachment upon the res adjudicata doctrine, because the granting of it would deny to the defendant (until the Court of Appeals indicates that the inference is not justified) the benefit of what logically results from what has been taken to be the view of the Court.

"The bill of complaint should, in consequence, be dismissed, with costs, for want of equity."

As the limitations in the claims of the reissued patent, carefully made to conform to our decision on the original patent, preclude a finding of invention in the three-part characteristic of the device, invention in the device of the reissue, if any, must reside in its several parts. Thus our attention is addressed to their structure.

It is quite evident that Jones, in making his socket, shopped around in the prior art, freely selecting things of value and discarding things without value. Practically all features of the new device can be found in company with other features in some old device. Of course, if in assembling and rearranging old things Jones produced a new entity, having new behavior and new capabilities, it might, none the less, amount to invention. But the invention would be confined to the new thing made of old parts and would, in view of our decision denying Jones invention based on a three-part device, be restricted, in all likelihood, to the structure into which it entered. And this we find to be so. We are of opinion that in the device as claimed in the reissue there is invention in some degree, but the invention Jones made is limited to the things he did and those things are measured in terms of structure. His invention is, therefore, limited to the particular structure disclosed, and, being so limited, it does not embrace the device of the defendant.

Passing by the question of validity of the reissued patent, we direct that the decree below be

Affirmed.